Curia, per

Frost, J.
The plaintiff claims the negroes* the subject of the suit, under a mortgage from Eliza Mc-Burney, dated 29th September4, 1838, and conditioned to pay three notes, of which the last Was payable in October, 1840. The mortgagor was resident in South Carolina, and the negroes mortgaged were also held in this State, at the time of the mortgage, and until the sale' under execution to the defendant, and the mortgage was executed Whilst the mortgagor Was on a visit to the plaintiff, who was resident in Alabama. A statute of Alabama provides, “that all deeds and conveyances of personal property, in trust to secure any debt or debts, shall be recorded in the office of the clerk of the county court of the county wherein the person making the deed resides, within thirty,days, or else the samé shall be void against creditors and subsequent purchasers without notice.” The mortgage deed was not recorded in the State of Alabama, nor in South Carolina* until a short time before the sale to the plaintiff. In Ja* *560 nuary, 1839, Eliza McBurney confessed a judgment to N. A. Cohen, and from time to time other .judgments were entered against her. In March, 1842, the sheriff sold the negroes to the defendant, the plaintiff attending the sale and giving notice of his mortgage.
The defendant can complain of no fraud in the mortgage against himself, but having purchased under an execution against the mortgagor, the judgment is part of his title, and he is invested with all the rights of the judgment creditor, to impeach the validity of any transfer which the mortgagor may have made of the property purchased, to hinder or defraud her creditors. Jones vs. Crawford, 1 McMullan, 376.
The first objection to the title of the plaintiff is, that the mortgage under which he claims was not recorded in the State of Alabama within thirty days, and is therefore void as to creditors. The law of South Carolina does not require mortgages of personal property to be recorded further than by providing that that mortgage or sale which shall be first recorded in the office of the Secretary of State, shall be adjudged and held to be the first mortgage, notwithstanding any former or other mortgage for the same property. So that, unless the plaintiff’s mortgage be void for not being recorded in the State of Alabama, pursuant to the statute recited, the plaintiff has a good title. Generally, it is not necessary to consider any other law than that of the jurisdiction having cognizance of the cause, in deciding questions of property. But since personal property has, in contemplation of law, no locality, the right of property and disposition attending the person of the owner, who may dispose of it in any country, conflicts sometimes arise between the different claimants, through a diversity of the law of the domicil of the party, of the country in which the contract may be made, and of the country where the property may be situated. In this collision the jurisdiction in which the property is situated, must be paramount. Every country has the right of regulating the transfer of property within its territory, since no right to such property can be enforced except through its officers and tribunals. But this absolute power the comity of nations has qualified, from considerations of mutual interest, *561 and an enlarged and liberal respect to the rights of property. When, however, foreign laws interfere with the laws of the country where the parties to the contract seek to enforce it, the domestic law is preferred. In deference to the power and authority possessed by the country in which the property may be situated, or the party contracting may be domiciled, the leading principles of conflicting jurisprudence are adopted. Thus, in Story’s Conflict of Laws, sec, 283, it is laid down that “ the law of the owner’s domicil' should in all cases determine the validity of eveiy transfer, alienation or disposition made by the owner, whether it be inter vivos or post mortem, and this is regularly true, unless there is some positive or customary law of the country where they are situated, providing for special cases, or from the nature of the property it has a necessary implied locality,” Section 284: “But it does not follow that a transfer made by the owner, according to the law of the place of the actual situs of the property, would not as completely divest the title.” Section 280: “Where the contract is either expressly or tacitly to be performed in any other place, then the general rule is, in conformity to the presumed intention of the parties, that the contract, as to its nature, validity, obligation and interpretation, is to be governed by the law of the place of performance,” These principles, derived principally from the civilians, and supported in the treatise on the conflict of laws by their authority, are sustained by common law adjudications, Thompson vs. Ketchum, 8 Johnson’s R. 146. The lex loci contractus is to govern, unless the parties, by the terms of the contract, had in view7 a different place. Powers vs. Lynch, 3 Mass. R. 80. “ It is a principle too well known and established, and founded on reasons too obvious, to require proof or illustration, that the rights and duties of the parties to a contract are to be defined and enforced according to the law of the country where made, provided it does not appear, from the nature of the contract, or from other facts, that in contemplation of the parties, the performance of the contract has relation to the laws of another country.” Randall vs. Renselaer, 1 Johnson’s R. 94, The action was on a note made in France, and void there for want of a stamp. By the court; “The payee of this *562 note, though it was made in France, resided, at the time, in this State, where it was to be paid. The parties never contemplated exacting payment of this note in that country, and this would form a sufficient excuse here for not adhering rigidly to a matter extrinsic and formal as to the contract, though it might be necessary in order to sustain an action in the courts of France.” Dixon's Executors vs. Ramsay's Executors, 3 Cra. 323. C. J. Marshall: “All rights to personal property are admitted to be regulated by the laws of the country in which the testator lived, but the suits for those rights must be governed by the laws of the country in which the tribunal is placed. No man can sue in the courts of any country, whatever his rights may be, unless in conformity with the rules prescribed by the laws of that country.” By the common law a sale of goods may be valid without delivery. By the law of Louisiana, delivery is necessary to complete the transfer. It has been firmly settled by adjudications, that the transfer of personal property in that State is not complete, so as to pass the title against creditors, unless a delivery is made in conformity to the laws of that State, though the transfer is made by the owner in his foreign domicil, and would be good without delivery by the laws of that domicil. Story’s Conflict of Laws, section 336, notes. These principles all concur in maintaining the validity of the plaintiff’s mortgage, according to the law of South Carolina, where the property was situated, the mortgagor domiciled, and where, of course, from these circumstances, the parties must have contemplated the execution of the contract.
The registry Act of a State can have no effect beyond its territory, except in determining the validity of transfers of property in that State, when that question arises in the courts of another State. Thus, if personal property in Alabama be sold, and the bill of sale not registered pursuant to the laws of that State, and'the validity of the transfer be brought in question in another State, reference must be had to the law where the property was situated at the timé of the contract, and by that law the question must be adjudicated. A registry Act must, from its import and effect, be territorial. Registry can have relation only to the *563 location of the property or the residence of the owner. Every State has its own laws on this subject. Unless residence of the owner and the location of the property be in the same State, a conflict occurs between the laws of different States, to which one cannot yield without submitting to the legislative authority of the other; for if the power is reciprocal, each State will be subject to the registry law of all the other States of the Union besides its own. Registration is designed to prevent fraudulent transfers of property, or fictitious credit, by giving notice of former alienations or liens. But such notice is merely constructive, and cannot be extended beyond the territory. The citizens of one State are not bound to notice the laws of another. If registry in one State, of a transfer by a resident of another State, of property not within the former, should operate as notice beyond the State where the transfer is registered, it would lead to insufferable fraud. A sale or mortgage by a citizen of South Carolina, of property in this State, registered in Alabama or Iowa, would be constructive notice to a subsequent purchaser in this State, and defeat his contract. If, as contended, the omission to comply with the law of Alabama in this case, invalidates the mortgage, pursuing the argument, if it had been there recorded, it would have been constructive notice in this State, and would be preferred to a subsequent mortgage recorded in this State ; for the law which is operative to invalidate a security by the omission to observe its enactment, must be also operative to give effect to the security when the enactment is observed ; a consequence which must obviously repel any recognition of the law of Alabama, as affecting the plaintiff’s mortgage. ’ The mortgagor being resident, and the property mortgaged located, in South Carolina, the law of Alabama has no operation on it. It was argued that Mrs. McBurney was a resident of Alabama when the mortgage was executed; but in the report agreed on by counsel, it is stated that she is a resident in South Carolina. The circumstance of owning a plantation and negroes in Alabama, relied on, would not, of itself, be sufficient to determine her residence in that State.
The next objection to the plaintiff’s right is presented by the exception, that the presiding Judge omitted to charge *564 the jury that possession by the mortgagor, after forfeiture of the condition, is sufficient evidence of fraud, unless rebutted by proof of the payment of wages or interest, or by other evidence to repel the presumption. The presumption of fraud from possession by a mortgagor after condition broken, Would be arbitrary, because contrary to almost universal experience. The habits of society are not distinguished by such punctuality in the payment of debts, or such rigor in enforcing the rights of creditors, as to justify arty such presumption from the default of the debtor, or forbearance of the creditor. Mortgages commonly remain Unsatisfied for a longer or shorter time after the debts secured by them have become payable ; and investments are sometimes permanently so continued. Payment of the debt is stipulated at short periods, so as to give the creditor a control over the property mortgaged, and indulgence is then given indefinitely. In Gist vs. Pressley and others, 2 Hill’s Ch. R. 318, possession by the mortgagor, after condition forfeited, is said to be only “one among the circumstances to enable a court or jury to judge of the character of the transaction.” And in Maples vs. Maples, Rice’s Eq. 307, it is treated as “only a circumstance which enters into the question of fraud.” In these cases the mortgages had been recorded, which distinguish them from this. But until a recent Act of the Legislature, no distinction Was made between the lien of recorded and unrecorded mortgages of personal property against creditors. Since the case of Cadogan vs. Kenneth, Cowper, 432, where possession is consistent with the deed, it has not been deemed fraudulent. In Henry vs. Smith, 1 Hill, 23, the authority of that case, and the cases of which it is the precedent, is recognized. The security of a mortgage recorded and unrecorded is the same. The common law does not distinguish between them. The registry Act does not impair the lien against creditors because it may not be recorded. In mortgages of slaves, very general practice has familiarized possession by the mortgagor as one of the conditions and incidents of the contract, as well when the mortgage is not recorded as when it is. In the Equity Court of Appeals, during the present Term, the case of Gourdin vs. The Bank of the State and others, Speers’s Equity, 439, has ex *565 tended the authority of Gist vs. Pressley, and Maples vs. Maples, to unrecorded mortgages of slaves.
In this case the jury Were instructed that the plaintiff had the legal title to recover, subject to their opinion as to the good faith in which the mortgage was executed ; and it was admitted by counsel (which does not appear in the report,) that they Were further instructed that the possession by the defendant was a badge or circumstance of fraud, to be also judged of by the jury. Evidence was produced on both sides, to sustain and impeach the fairness of the notes and mortgage. The case was fully submitted to the jury, and the court does not discover such insufficiency in the proof as to require the case to be sent back.
The motion is refused.
Richarüson, Evans and Butlér, JJ. concurred.